902 So.2d 991 (2005)
In re Norman MOPSIK.
No. 2004-B-2395.
Supreme Court of Louisiana.
May 24, 2005.
Rehearing Denied June 24, 2005.
*992 Charles Bennett Plattsmier, Chief Disciplinary Counsel, Eric Kelly Barefield, Assistant Disciplinary Counsel, Robin Marie DeSalle-Pittman, Assistant Disciplinary Counsel, for Applicant.
Deutsch, Kerrigan & Stiles, LLP, Frederick R. Bott, Beverly Ann Aloisio, Norman Mopsik, New Orleans, for Respondent.
PER CURIAM.
The Office of Disciplinary Counsel ("ODC") filed formal charges against respondent, Norman Mopsik, an attorney licensed to practice law in Louisiana. The disciplinary board recommended the formal charges be dismissed, and the ODC sought review of that decision in this court. For the reasons assigned, we find the formal charges were proven by clear and convincing evidence and therefore impose discipline.

UNDERLYING FACTS
Respondent practices law in the City of New Orleans with another attorney. He maintains a staff of three paralegals and a receptionist.
During the time frame at issue, respondent employed Shirley Gai as a paralegal. Ms. Gai was a personal friend of Randall Schmitt, who was involved in a domestic dispute with his former girlfriend, Pamela Shaw. In June 2001, respondent agreed to represent Mr. Schmitt. According to respondent, his representation of Mr. Schmitt was conditioned on the matter being resolved amicably rather than through litigation.
After accepting the representation, respondent had no contact with Mr. Schmitt. Although respondent later testified it was his practice to review all files in his office at least once a month, the facts suggest he delegated responsibility for handling Mr. Schmitt's legal matter to Ms. Gai.
At the time respondent undertook the representation of Mr. Schmitt, there was a domestic abuse suit by Ms. Shaw against Mr. Schmitt pending in the 24th Judicial District Court for the Parish of Jefferson, Pamela Shaw v. Randall Schmitt, No. 567-936. In that proceeding, the trial court issued a temporary restraining order against Mr. Schmitt granting Ms. Shaw temporary custody of her son and enjoining Mr. Schmitt from contacting Ms. Shaw or the child.
Ms. Gai, on behalf of Mr. Schmitt, met with Ms. Shaw's attorney, George Healy, IV, on two or three occasions and sent letters to Mr. Healy concerning the matter. Mr. Healy addressed several pieces of correspondence to Ms. Gai which referred to her as "Attorney at Law," and he later testified that he believed Ms. Gai was an attorney in respondent's office, although he conceded he could not recall whether she specifically told him she was an attorney. Respondent indicated he sent a letter to Mr. Healy advising that Ms. Gai was not an attorney, but Mr. Healy testified he never received a letter to this effect.
During the period from July 16 through July 19, 2001, respondent was in his office only intermittently, and was out of the office in New York from July 20 through July 23, 2001. On July 17, 2001, Ms. Gai and Mr. Schmitt appeared before Judge Kern Reese of the Civil District Court for the Parish of Orleans. Ms. Gai told Judge Reese that she worked with respondent, *993 that Mr. Schmitt's mother was dying of cancer, and that Ms. Shaw was not permitting their son to visit his grandmother. Ms. Gai presented Judge Reese with a pleading styled "Temporary Petition for Joint Custody" which purported to bear respondent's signature, praying for joint custody of the child and giving Mr. Schmitt certain visitation rights. Neither Ms. Gai nor Mr. Schmitt disclosed to Judge Reese the existence of the proceedings in the 24th JDC or the existence of the temporary restraining order issued by the judge in that case. Based on the representations of Ms. Gai and Mr. Schmitt, Judge Reese signed an order giving Mr. Schmitt the right to have visitation with the child from 12:00 a.m. July 18, 2001 until 6:00 p.m. Sunday, July 22, 2001.
On July 18, 2001, Mr. Schmitt took Judge Reese's order to his son's daycare center in Jefferson Parish and used it in an effort to pick up the child from daycare. Jefferson Parish Sheriff's Office deputies and Ms. Shaw were called and they prevented Mr. Schmitt from taking the child from the daycare. Following this incident, Jefferson Parish authorities contacted Judge Reese and advised him of the existing restraining and custody order issued by the 24th JDC. On July 19, 2001, Judge Reese issued an order vacating his order of July 17, 2001.
As a result of this incident, a disciplinary complaint was filed against respondent with the ODC. Respondent maintained that he had no knowledge of the Temporary Petition until he received a copy of the complaint from the ODC in December 2001. Respondent admitted that Ms. Gai was the primary contact on Mr. Schmitt's case and that he never spoke with Mr. Healy. Nevertheless, respondent asserted that Ms. Gai did not hold herself out as an attorney in handling the Schmitt matter.

DISCIPLINARY PROCEEDINGS
Following its investigation, the ODC filed one count of formal charges against respondent, alleging that his conduct violated Rules 3.1 (meritorious claims and contentions), 3.4(b) (falsifying evidence), 3.4(c) (knowing disobedience of a court order), 5.3(b)(c) (responsibilities regarding non-lawyer assistants), 5.5(b) (assisting a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. Specifically, respondent asserted that he "did not prepare, sign, nor did he authorize any other person to prepare or sign his name to, or to file," the petition for temporary joint custody. Respondent also asserted that he never authorized Ms. Gai to hold herself out to the public as a licensed attorney.

Hearing Committee Recommendation
This matter proceeded to a formal hearing before the hearing committee. Respondent testified on his own behalf. The ODC introduced the testimony of Mr. Healy and deposition testimony from Ms. Gai.
At the conclusion of the hearing, the committee issued its report. It made a finding of fact that respondent never reviewed Mr. Schmitt's file and did not investigate what occurred in the file until he received a copy of the complaint from the ODC. Based on this factual finding, the committee determined that respondent violated Rule 5.3(b) because he failed to reasonably supervise Ms. Gai. However, the committee found that respondent did not *994 otherwise violate the Rules of Professional Conduct as charged in the formal charges.
In addressing the issue of sanctions, the committee found that respondent violated duties owed to the public, the legal system, and the profession. It determined his misconduct caused serious potential harm to Ms. Shaw, her son, and others. The committee concluded that the baseline sanction for respondent's misconduct is a reprimand.
It found the following aggravating factors are present: prior disciplinary offenses,[1] refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law (admitted 1962). In mitigation, it noted the absence of a dishonest or selfish motive and character or reputation.
Based on respondent's refusal to acknowledge the wrongful nature of his conduct and the serious potential harm caused, the committee determined that an upward deviation to a one year and one day suspension is appropriate. However, the committee recommended that the suspension be deferred in its entirety if respondent attended additional continuing legal education courses.
Both respondent and the ODC filed objections to the hearing committee's recommendation.

Ruling of the Disciplinary Board
The disciplinary board rejected the committee's factual finding that respondent never reviewed Mr. Schmitt's file. Instead, the board emphasized respondent's testimony that it was his practice to review all files in his office at least once a month. Citing Louisiana State Bar Ass'n v. Keys, 567 So.2d 588 (La.1990), which holds that a lawyer is not required to guarantee proper conduct of a non-lawyer employee but only to make reasonable efforts to ensure the employee's conduct is compatible with the attorney's professional obligations, the board determined that respondent did make reasonable efforts to ensure that Ms. Gai's conduct was proper. He reviewed most of Mr. Healy's correspondence, talked with Ms. Gai about the correspondence and status of the case, and reviewed the file. Furthermore, respondent testified that Ms. Gai's prior conduct gave no indication that she would misrepresent herself as an attorney or otherwise act inappropriately. Accordingly, the board concluded that respondent did not violate Rules 5.3(b), 5.5(b), and 8.4(a) as charged.
The board further found no violation of the Rules of Professional Conduct by respondent stemming from Ms. Gai's actions in presenting the petition for temporary custody to Judge Reese. Respondent had no indication from any of Ms. Gai's previous actions that she would misrepresent herself as an attorney or otherwise act inappropriately. Respondent further testified that he had no knowledge of the filing of the petition for temporary custody until sometime after Ms. Shaw filed her complaint with the ODC. Accordingly, the board found the ODC failed to prove by clear and convincing evidence that respondent had knowledge of Ms. Gai's conduct at a time when the consequences could be avoided and failed to take reasonable remedial action.
Finally, the board found that respondent did not engage in dishonest or deceitful conduct or conduct prejudicial to the administration of justice.
*995 Based on these determinations, the board found no clear and convincing evidence of any rule violations. Accordingly, the board dismissed all charges against respondent and assessed the ODC with the costs of these proceedings. One member of the board dissented, and would recommend a sixty-day suspension for respondent's failure to supervise Ms. Gai.
The ODC sought review of the board's ruling in this court. We ordered the parties to submit briefs addressing the issue of whether the record supports the disciplinary board's report. After reviewing the briefs filed by both parties, we docketed the matter for oral argument.

DISCUSSION
Bar disciplinary matters fall under the original jurisdiction of this court. La. Const. art. V, § 5(B). We act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). Nonetheless, we generally accept the credibility evaluations made by those hearing committee members "who were present during respondent's testimony and who act as the eyes and ears of this court." In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
Based on our thorough review of the record, we determine the findings of fact by the hearing committee in this case are well supported. Although respondent testified that it was his general practice to review all the files in his office at least once a month, there is no indication he was familiar with Mr. Schmitt's file until after the disciplinary complaint was filed.[2] Moreover, even accepting respondent's somewhat self-serving testimony that he reviewed the file, the record clearly and convincingly demonstrates that he failed to exercise any meaningful supervisory oversight of Ms. Gai. Although lawyers are not prohibited from employing the services of non-lawyer assistants and delegating functions to them, the lawyer is required to supervise the delegated work and retains complete responsibility therefor. In re: Comish, 04-1453 (La.12/13/04), 889 So.2d 236. By all indications, respondent exercised no responsibility over Mr. Schmitt's case. To the contrary, he completely abdicated his professional responsibilities over this case to his paralegal, Ms. Gai, permitting her to act as an attorney. It is of no moment for purposes of this disciplinary matter that Ms. Gai may have acted wrongfully in connection with the filing of the Temporary Petition; the fact remains that respondent facilitated her actions by failing to exercise any supervision over her from the inception of his representation in this case. We must conclude that respondent violated Rule 5.3 by failing to supervise Ms. Gai and violated Rule 5.5(b) by assisting her in the unauthorized practice of law.[3]
Having found evidence of professional misconduct, it follows that the disciplinary board erred in dismissing the formal charges against respondent. The only remaining issue, then, is to determine the appropriate discipline for respondent's *996 misconduct. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
We find that respondent negligently violated duties owed as a professional. His conduct in failing to adequately supervise his paralegal created the clear potential for harm, although intervening factors prevented any actual injury. Under such facts, and considering Standard 7.3 of the ABA's Standards for Imposing Lawyer Sanctions, we agree with the hearing committee that the applicable baseline sanction is a reprimand.
In mitigation, we acknowledge that respondent's conduct was not the product of any dishonest or selfish motive, and that respondent possesses a reputation in the community for good character. However, several significant aggravating factors are present, including respondent's prior disciplinary record, his refusal to acknowledge the wrongful nature of his conduct, the vulnerability of the victim, and substantial experience in the practice of law.
Considering the record as a whole, we will suspend respondent from the practice of law for a period of sixty days.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Norman Mopsik, Louisiana Bar Roll number 9665, be and he hereby is suspended from the practice of law for a period of sixty days. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
KIMBALL, J., concurs in part and dissents in part and assigns reasons.
TRAYLOR, J., concurs in part and dissents in part for reasons assigned by KIMBALL, J.
KIMBALL, J., concurring in part and dissenting in part.
I agree that the disciplinary board erred in dismissing the formal charges; however, I believe that the sixty-day suspension imposed by the majority is entirely too lenient for respondent's knowing facilitation of his paralegal's unauthorized practice of law. Respondent represented Randall Schmitt, but never met with or spoke to his client because he allowed Shirley Gai to "handle" the matter. For her part, Ms. Gai wrote several letters to opposing counsel on the letterhead of respondent's law firm, which she signed in her own name, without designating herself as a paralegal or otherwise indicating that she is not an attorney licensed to practice law in Louisiana. Ms. Gai frequently referred to Mr. Schmitt as "my client,"[1] and she spoke with counsel on the telephone several times and went to his law office to meet with him regarding the Schmitt matter. In turn, opposing counsel addressed Ms. Gai as "Attorney at Law" when he corresponded *997 with her. Notably, his false impression that Ms. Gai was an attorney was never corrected. In mid-July 2001, some six weeks after the representation commenced, Ms. Gai filed an ex parte petition for temporary joint custody on Mr. Schmitt's behalf in the Civil District Court for the Parish of Orleans. Though his story later changed, respondent admitted in a sworn statement that he drafted and signed the petition for temporary joint custody and gave it to Mr. Schmitt or Ms. Gai to file at Civil District Court. Respondent also admitted that Ms. Gai was the primary contact on Mr. Schmitt's case and that he never spoke with opposing counsel concerning the matter. Finally, though respondent has claimed that he reviews "every single file" in his office  some 1,500 open files  at least once a month, he admitted that he never reviewed the Schmitt file and could not recall seeing many of the letters written to Ms. Gai by Mr. Healy and vice-versa.
Unquestionably, the evidence in this record proves in a clear and convincing fashion that respondent violated Rule 5.3 of the Rules of Professional Conduct, which directs the supervising attorney to ensure that the non-lawyer's "conduct is compatible with the professional obligations of the lawyer," and Rule 5.5(b), which prohibits the lawyer from assisting a person who is not a member of the bar in any activity which constitutes the unauthorized practice of law. In In re: Comish, 04-1453 (La.12/13/04), 889 So.2d 236, we reaffirmed longstanding prior jurisprudence holding that such misconduct is "serious" and for which the baseline sanction is disbarment. In light of the significant aggravating factors present in this case, and considering the potential for serious harm as a result of respondent's conduct, I must respectfully dissent from the imposition of nothing more than a sixty-day suspension from the practice of law.
NOTES
[1] Respondent was admonished by the disciplinary board in 1997 for failing to protect a third party's interest in settlement funds and engaging in conduct prejudicial to the administration of justice.
[2] The only objective evidence which might arguably support respondent's testimony that he reviewed the Schmitt file is a letter he purportedly sent to Mr. Healy correcting Mr. Healy's misapprehension that Ms. Gai was an attorney. However, Mr. Healy testified that he never received this letter.
[3] Like the hearing committee, we find no clear and convincing evidence to support the other rule violations alleged by the ODC.
[1] Respondent was asked about this reference during the formal hearing in this matter. He testified that he was not at all troubled by Ms. Gai's referring to Mr. Schmitt as her client because she only used those words "in the context as being a paralegal."